THE FIRST NATIONAL BANK OF MEMPHIS: FRANK S. DAVIS, BENJAMIN EISEMAN and JOHN R. STEBBINS, executors, &c., of Charles P. Norris, deceased.

*vs.*

ADAM C. KIDD, impleaded with Elisha Seymour and wife and George S. Spalding.

A copy of the organization certificate of a national bank, certified and sealed by the comptroller of the currency, is legal and sufficient evidence of the corporate existence of such bank.

Certain copies, authenticated in compliance with the act of congress of May 27, 1790; with section 19, chapter 73, General Statutes; section 6, chapter 77, General Statutes; section 66, chapter 73, General Statutes, and chapter 63, Laws 1869. *Held* to have been properly received in evidence in this case.

Consideration of certain evidence received for the purpose of showing that the notes, and the mortgage which this action is brought to foreclose, had been taken and held in trust for, and were the property of the plaintiff Bank.

Kidd, one of the defendants, claiming in his answer to be the owner of a judgment against his co-defendant Seymour, who was the mortgagor in the mortgage aforesaid, (a mortgage upon property in St. Paul,) and that his judgment was a lien upon the mortgaged premises junior to the mortgage; that Seymour was insolvent, and that at the time when Seymour made the mortgage aforesaid, he also mortgaged to the same mortgagee property in New Orleans to secure part of the same debt; further claimed in his answer, that plaintiff should be compelled to resort to the New Orleans property, on which his (Kidd's) judgment was not a lien, before resorting to the St. Paul property upon which such judgment was a lien. *Held*, that the facts thus set up did not constitute a counter-claim, and therefore were not admitted by a failure to reply to the same.

The special facts appearing in this case considered at length with reference to their bearing upon the inquiry whether the plaintiff Bank, was, or was not, the legal owner of the notes and mortgage to which this action relates.

Appeal by the defendant Kidd from an order of the district court for Ramsey county refusing a new trial.

The complaint alleges the conveyance by Charles P. Norris to the defendant, Elisha Seymour, on the 22nd March, 1869, of lots 27, 28 and 29, in block 69 in Dayton & Irvine's addition to St. Paul, and the concurrent execution and delivery by Seymour to Norris of a mortgage on the premises so conveyed, to secure the payment of five promissory notes for the purchase money. The complaint further alleges the death of Norris in the state of Tennessee, the probate of his will in the county court of Selby county in that state, a court of competent jurisdiction for that purpose, the issuance of letters testamentary by that court to the plaintiffs Davis, Eiseman and Stebbins, the executors named in the will, the acceptance and qualification of the executors, the filing in the probate court of Ramsey county, and the filing and record in the office of the register deeds of the same county, of a duly authenticated copy of the appointment of such executors. The complaint then alleges " that although the said notes and mortgage were executed and delivered to said Norris, the First National Bank of Memphis in the state of Tennessee, which there and then was and still is a corporation duly created and existing under the act of congress in such case made and provided, was then and there the owner of said notes and mortgage and entitled to the proceeds thereof, and that the said Charles P. Norris held the same in trust for the use and benefit of the said First National Bank of Memphis ; and that the said First National Bank is still the owner and entitled to the proceeds thereof." That none of the said notes or the interest thereon or any part thereof has been paid ; that three of the notes (describing them,) are now due. That since the delivery of the notes and mortgage the said real estate has been, by Seymour and his wife, duly conveyed, subject to the

mortgage, to Charles McIlrath by deed dated July 7th, 1870, and by him to the defendant Spalding, who claims to be the owner thereof under said conveyances, subject to the lien of the mortgage. That the defendant Kidd claims some interest or lien on the mortgaged premises, subject to the lien of the mortgage.

The complaint further alleges facts showing that the three lots should be sold together as one parcel, and prays judgment of foreclosure and sale, the proceeds of sale to be applied as well to the amount to become due as on the amount already due on the notes and mortgage.

The answer of Kidd, (who alone appeared in the action,) admits (by not denying) the conveyance by Norris to Seymour and the execution of the notes and mortgage described in the complaint, and, by a denial of information, &c., puts in issue the averments of the complaint as to the existence and probate of the will of Norris, the appointment, &c., of executors, and the proceedings in Selby county, Tennessee, and in Ramsey county; the existence and corporate character of the First National Bank of Memphis, its authority to hold real estate, and its ownership of the notes and mortgage; the trust alleged in the complaint and the validity of any such trust. The answer denies ownership of the notes and mortgage in any of the plaintiffs, and alleges title in Charles McIlrath, and that the plaintiffs are not the real parties in interest in the action.

The answer further alleges the recovery and docketing of a judgment in favor of the defendant Kidd against Seymour, in the district court for Ramsey county, on the 10th January, 1870; that the first of the notes described in the complaint, (a note for $3,700,) was further secured by a mortgage of even date with that described in the complaint, and executed concurrently therewith by Seymour to Norris, upon certain described real estate in New Orleans, of the value of

$5,000. That ever since the recovery of the defendant's judgment against Seymour, the latter has been wholly insolvent (except for the lands described in the complaint and answer); that the plaintiffs ought not to subject the lands described in the complaint to sale under their mortgage, until the real estate in New Orleans has first been sold and the proceeds applied to satisfy the amount claimed in the complaint.

The answer concludes with a prayer that the plaintiffs take nothing by their action, that the same be dismissed with costs, and for general relief.

The action was tried by the court without a jury. To the statement in the opinion of the exceptions taken at the trial, it may be added that the questions put on cross-examination to the witness Armstrong, whose evidence in chief is fully reported in the opinion, were: (1) What mortgage or mortgages are referred to on the face of the note for $3,700, shown you by plaintiff's counsel? (2) When you took those notes did you take any mortgage to secure them in the capacity in which you took the notes? (3) Did the taking of these notes comprise all the business done by you in that transaction in and about that property?

E. C. PALMER, for Appellant.

H. J. HORN, for Respondents.

*By the Court.*—BERRY, J.—This action is brought to foreclose a mortgage of certain real estate in the city of St Paul.

I.  A copy of its " organization certificate," certified and sealed by the comptroller of the currency, is declared to be " legal and sufficient evidence" of the corporate existence of a national bank by section 6, chapter 58, Laws U. S. 1863, and

by section 6, chapter 106, Laws U. S. 1864; see also sections 8 and 62 of latter chapter. Defendant's objection to the introduction of the copy of the organization certificate of the plaintiff Bank was, therefore, properly overruled.

II. The answer raised issues as to the existence of a last will and testament of Charles P. Norris, as to the probate thereof, the appointment, acceptance and qualification of executors, and the filing of copies of the letters testamentary in the office of the judge of probate, and register of deeds of Ramsey county. To maintain the affirmative of these issues, plaintiffs offered in evidence, first, a paper purporting to be a copy of the last will and testament of said Norris, and of the probate thereof, as the same appeared of record, with certificates of authentication. The certificates of authentication, being in compliance with the provision of the act of congress of May 27th, 1790, in reference to the authentication of the records and judicial proceedings of courts, as well as with section 49, chapter 73, General Statutes, were sufficient to make the evidence competent. This remark is applicable also to the evidence secondly offered upon the issues aforesaid, to-wit: the copy of letters testamentary, and the certificate authenticating the same, and it is to be added that copies, (duly authenticated, as were those introduced in this instance,) of such copy were properly receivable in evidence under section 6, chapter 77, General Statutes, section 66, chapter 73, General Statutes, and chapter 63, Laws 1869. Some discrepancies between the (so to speak,) original copy, and *its* copies, brought from the offices of the register of deeds and probate judge of Ramsey county, were pointed out by the defendant's counsel, but they were properly overlooked by the court below, as evidently occasioned by clerical errors.

III. It was alleged in the complaint and found by the court that the mortgaged premises were conveyed by Norris to the

defendant Seymour, and that the mortgage, (the foreclosure of which is sought in this action,) was executed by Seymour to Norris contemporaneously with the execution of the conveyance from Norris to Seymour, and to secure five promissory notes given for the purchase money of the premises conveyed. It was further alleged and found that although the notes and mortgage were executed and delivered to Norris, the plaintiff, the First National Bank of Memphis, from the time of their delivery was and has continued to be the owner thereof, and entitled to the proceeds thereof, Norris holding the same in trust for the use and benefit of said bank.

To maintain these allegations plaintiff put in evidence,

1st.    The five notes and the record of the mortgage.

2d.    The record of a deed from the plaintiff, the First National Bank of Memphis, to Horace Thompson, conveying the McCarger block in St. Paul, and the record of a deed from Horace Thompson to Norris, conveying the mortgaged property aforesaid.

3d.    The testimony of George W. Armstrong, as follows, viz.: " I know Charles P. Norris; I know the McCarger block in St. Paul; I was agent of Norris in the purchase of the premises described in the complaint, (i. e., the mortgaged premises;) Norris was vice-president of the First National Bank of Memphis; Norris claimed to act as agent for that bank. The bank and Thompson exchanged property, and the property in complaint was received in part payment of the McCarger block. It was put in Norris' name at his suggestion for convenience of transfer, and because there was, I think, a limited time that the bank could hold real estate. After this I had the property for sale, and Mr. Seymour bought it through my agency. I understood from Mr. Norris that he held the property for the bank, as trustee. I identify the notes, (i. e., the five notes shown witness.) They were re-

ceived from Seymour when he purchased the property. The whole transaction was on account of the bank." And on cross-examination the witness said : " My knowledge of the capacity in which Mr. Norris acted is based on oral communications from him, and on letters received from him." To all of this evidence defendant objected, as " incompetent, immaterial and irrelevant." There are two answers to defendant's objections. In the first place, the purpose of the evidence was to show that Norris held the notes and mortgage in trust for the bank. The evidence, as far as it goes, is a history of the transactions out of which the alleged trust arose, and, in addition, admissions on the part of Norris that such trust existed. The evidence tended to show that the consideration for the conveyance to Norris of the premises covered by the mortgage was paid by the bank ; that Norris, who was the vice-president and agent of the bank, took the conveyance in his own name for the benefit of the bank ; that he held the premises for the bank, and sold them, and held their proceeds, to-wit : the notes and mortgages, for the bank. As to how it was that Norris held the premises in trust, does not explicitly appear ; but when we consider where the bank was located, and where the premises were situated, the relation which Norris sustained to the bank, that the whole business was transacted by and through him, and among other things the conveyance of the premises made to him, at his own suggestion, there is no difficulty in presuming, in support of his admissions that he held the premises in trust for the bank, and in support of manifest justice, that the conveyance was taken in his name without the knowledge or consent of the bank by which the consideration was paid, or that, in violation of his trust as vice-president and agent of the bank, he had purchased the premises with the property of the bank. It is easy to see that this construction might, in law, be put

upon his conduct, without any imputation whatever upon him in morals. And it would follow that, notwithstanding the grant was made to him upon a consideration paid by the bank, a trust would result in favor of the bank. *Gen. Stat.*, *chap.* 43, *secs.* 7, 9. Upon the issue made in the pleadings, as to whether or not Norris held the notes and mortgage in trust, the evidence objected to was competent, material and relevant.

The other answer to defendant's objections is, that the issue spoken of was an immaterial issue. The bank and the representatives of Norris joined as plaintiffs in this action. If they were agreed, (as the complaint shows them to have been,) that the notes and mortgage, though running to Norris, were held by him in trust for the bank, which was entitled to the proceeds thereof, it was not for defendant to deny it. The trust is an affair of the parties thereto, an affair in which the defendant, who claims nothing except as a judgment creditor of Seymour, the mortgagee, has neither part nor lot. As it is of no consequence to him whether the alleged trust is well founded or not, no reason can exist why he should be permitted to contest it. In this view of the matter, the evidence under consideration would be altogether immaterial upon the question of trust, and it would be quite superfluous for plaintiffs to offer any proof upon the subject. The case, however, would be one in which, as the admission of the evidence was harmless, it would furnish no ground for a new trial.

IV. Defendant Kidd, who alone answers, alleges in his answer, that he is the owner of a judgment recovered by him in the district court for Ramsey county against Seymour, that the judgment is a lien upon the mortgaged premises, junior to the mortgage, that Seymour is insolvent, and that at the same time when Seymour made the mortgage, which this ac-

tion is brought to foreclose, he also mortgaged to Norris certain property in New Orleans, owned by him, and of the value of $5,000, to secure one of the five promissory notes before mentioned, (to-wit, the note for $3,700.) Defendant Kidd claims that, under the circumstances, plaintiff should be compelled to resort to the New Orleans property, on which he, (Kidd,) has no lien, before resorting to the St. Paul property, on which he has a lien. Defendant insists that the facts thus set up by him constitute a counter-claim, and, there being no reply, that the same stands admitted. It is unnecessary to enquire whether or not defendant states a case in which he could properly insist upon the interposition which he asks for. Conceding such a case to be stated, it is plain that defendant does not set up a " counter-claim," as the same is defined in sec. 80, chap. 66, Gen. Stat., but an " equity,"of the kind referred to in subdiv. third of sec. 79 of the same chapter. It follows, that the existence of the facts raising such equity was not admitted by plaintiffs' failure to reply, and, as no evidence was introduced by defendant to establish them, they require no further consideration.

V. We think the questions addressed to the witness Armstrong by the defendant were rightly excluded, as not proper cross-examination. It is quite evident, as plaintiffs suggest, that defendant was attempting in this way to make proof of the facts, set up in his answer, in reference to the New Orleans mortgage.

VI. Passing the objection taken to the introduction of the deeds to McIlrath and Spalding with the remark that it is of no practical consequence whether they were properly received or not, we come to the only remaining point made by defendant in support of his appeal. This is, that even if there was no error in the admission of evidence, the court below " erred in finding that the bank was owner of the notes

and mortgage." Defendant argues that " the evidence shows conclusively that the bank was not authorized to own or hold said mortgage, either directly or indirectly, by reason of the inhibition contained in the 28th section of the act of congress. It being proved that the whole transaction was on account of the bank, and the bank being incompetent to acquire either the legal or beneficial title to the property, it follows that the mortgage was void, and a court of equity will refuse to enforce it."

The legal title in Norris to the notes and mortgage is not open to question, being admitted by the pleadings. Nor is there any objection made to the validity of the mortgage itself, on account of illegality or otherwise. So far as this branch of the case is concerned, the only issue of fact raised by the answer is as to whether or not Norris held the notes and mortgage in trust for the bank, so that the equitable or beneficial ownership thereof was in the bank. It was competent, under the provisions of the national currency acts, for the bank to take, hold and own notes and mortgages of real estate in certain cases, and as there is not, so far as we are aware, any inhibition express or implied, forbidding national banks to take, hold and own such notes and mortgages through the medium of a trustee, there is no reason why they may not, for convenience or other proper purpose, avail themselves of this not unusual way of doing business.

There being no averment in the answer that the mortgage was given or held in contravention of the national currency acts, or that the mortgage was invalid, there was no issue upon either of these points; and since it was competent for a national bank, in certain cases, to take, hold and own mortgages of real estate in its own name, or that of a trustee, it was not only not necessary for the plaintiffs to show, as part of their case, that the mortgage in this case was not illegally taken or

held, but the court was not bound to presume or to find that the taking and holding of the mortgage in this case was unauthorized and illegal. Such a presumption or finding would have been outside of the issue which the parties by their pleadings have submitted to the court. Still, if it be admitted, as seems to be said in *Coppell vs. Hall*, 7 *Wallace*, 558, that if any illegality was disclosed by the evidence adduced by either party, whether the evidence be pertinent to the issue or not, the disclosure should be fatal to the case, we do not think that the evidence of Armstrong in this instance would have been sufficient to warrant the court below in inferring that it was illegal for the bank to take and hold the mortgage in question here. Illegality is no more to be presumed than fraud. There is no ground, then, whatever for questioning the legal authority and right of the bank to purchase, hold and convey the McCarger block under the 28th section of the national currency act of 1864. Any question of such authority or right, in the absence of affirmative evidence of some contravention of the act just mentioned, would be to *presume* illegality. Having, then, presumably, acquired the McCarger block legally, and holding the same by authority of law, the bank is authorized, by the act aforesaid, to convey the same. And while we find no judicial construction of the provisions of the act in this respect, we do not think that they are to receive a construction so narrow as would require the bank to convey only for cash, and would forbid it from receiving the price, as in this instance, in part in other real estate, or from selling, according to the most usual practice of vendors of real estate, partly for cash and partly on time, or wholly on time. If we are right, then the bank was guilty of no violation of law in acquiring the mortgaged property as a part payment for the McCarger block, or in taking the notes and mortgages in payment, partial or entire, for the property when it was conveyed to Seymour.

We think this a fair construction of the act of congress. If, however, it be not allowable, (and we speak with some diffidence, since our construction is not final,) we see no reason why, if Norris, acting as vice-president and agent of the bank, violated the law in disposing of the McCarger block, he did not thereby incur a liability to the bank, for which the bank may properly be treated as having received satisfaction *pro tanto* by his turning over to it, and holding for it, the notes and mortgage. In that case it would certainly be competent for the bank to receive and hold them, as for a debt previously contracted.

These are, we believe, substantially all the points which we are asked to consider, and the result is that the order denying the motion for a new trial is affirmed.